IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Keith Bratcher,                          )
                                         )      Civil Action No.8:08-2141-GRA-BHH
                        Petitioner,      )
                                         )
            v.                           )      **REPORT AND RECOMMENDATION**
                                         )      **OF MAGISTRATE JUDGE**
Warden of McCormick                      )
Correctional Institution,                )
                                         )
                        Respondent.      )
_____ )

The petitioner, a state prisoner, seeks relief pursuant to Title 28, United States Code, Section 2254. The petitioner is represented by retained counsel. This matter is before the Court on the respondent's motion for summary judgment. (Dkt. # 18.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

The petitioner brought this habeas action on June 6, 2008. On November 5, 2008, the respondent moved for summary judgment. On March 19, 2009, the petitioner filed a response opposing the respondent's summary judgment motion.

**PROCEDURAL HISTORY**

The petitioner is currently incarcerated in the McCormick Correctional Institution. The petitioner was indicted for murder and possession of a firearm or knife during the commission of a violent crime. At trial, he was represented by J. Stephen Welch. On November 17, 1999, the petitioner was convicted as charged by a jury. The Honorable James W. Johnson, Jr., sentenced the petitioner to thirty years for the murder and five years for the firearms charge to run concurrently. The petitioner timely filed a direct appeal.

On appeal, the petitioner was again represented by Welch.  In his final brief, the petitioner raised the following issues:

> 1. Did the trial court abuse its discretion by denying Bratcher's motion to suppress evidence concerning his wife's life insurance policy?
>
> 2. Did the trial court err by denying Bratcher's motion for a directed verdict?

On September 10, 2001, the South Carolina Court of Appeals affirmed the petitioner's convictions in an unpublished opinion, *State v. Bratcher*, No. 2001-UP-401 (S.C. Ct. App. 2001). On September 25, 2001, the petitioner filed a motion for rehearing which was denied on October 17, 2001.

The petitioner then filed a petition for writ of certiorari in the South Carolina Supreme Court on November 13, 2001.  In the petition, the petitioner raised the following issue: "Did the Court of Appeals err in failing to over turn the trial judge's denial of a directed verdict?" (Pet. 1.)   On February 21, 2002, the South Carolina Supreme Court denied the petitioner review and the remittitur was sent down on August 28, 2002.

On May 3, 2002, the petitioner filed an application for post-conviction relief ("PCR"). On October 7, 2003, an evidentiary hearing was held before the Honorable Wyatt Saunders. The petitioner was present at the hearing and was represented by Rodney W. Richey.   The petitioner raised various claims of ineffective assistance of counsel.  At the conclusion of the hearing, Judge Saunders orally denied relief. (App. 527-528.)   On December 19, 2003, Judge Saunders filed a written order denying the petitioner's application for PCR. (App. 531-539.)

The petitioner timely filed an appeal in the South Carolina Supreme Court. On appeal, he was represented by Wanda P. Hagler of the South Carolina Office of Appellate

Defense. On January 4, 2005, he filed a petition for writ of certiorari raising the following issues:

> 1. Did trial counsel err in failing to call Daniel Spivey as a favorable witness on behalf of the defense?
>
> 2. Did trial counsel err in failing to call witnesses who would have testified that there was no marital discord between the parties in support of petitioner's defense of accident?
>
> 3. Did trial counsel err in failing to renew his motion to exclude the insurance policy benefits evidence?
>
> 4. Did trial counsel err in advising petitioner not to testify at trial?
>
> 5. Did trial counsel err in failing to object to the Doyle error in the case?

(Pet. 2.) The court granted the petitioner's writ of certiorari and further briefing was ordered. On October 20, 2006, the petitioner filed a brief.  On June 4, 2007, the South Carolina Supreme Court dismissed certiorari as improvidently granted in a memorandum opinion, *Bratcher v. State*, Memo Op. No. 2007-MO-032 (S.C.S.Ct. June 4, 2007).  The remittitur was sent down on June 20, 2007.

In this habeas petition, the raises the following grounds for relief, quoted verbatim:

**Ground One**: Ineffective assistance of counsel at trial.

**Supporting Facts:**

> 1) Counsel failed to present testimony of a crime scene expert.
>
> 2) Counsel failed to present testimony of a firearms expert.
>
> 3) Counsel failed to effectively communicate plea offers to the petitioner.
>
> 4) Counsel failed to call the petitioner as a witness in his trial and in the context of apparent presentation of an "accident" defense wherein the petitioner's testimony was essential for effective assertion of this defense.
>
> 5) Counsel failed to present to and review with results of a poly graph examination given by police to the sole eyewitness to the firearms discharge.

3

6) Counsel failed to interview, prepare and call critical fact witnesses, including co-workers of the petitioner and the deceased, to the stand on issues of marital happiness and the petitioner's good character despite the petitioner's provision to sequestered at trial having voluntarily appeared for the petitioner.

7) Counsel failed to procure and present witnesses who could establish that the petitioner was not familiar with firearms.

8) Counsel insisted on taking the case to trial insisting on the assurance of success at trial while refusing to pursue any non-trial disposition nor discussing this with the petitioner.

9) Counsel failed to render effective assistance by advising the petitioner that since there was no evidence the prosecution could present on malice, he could not be convicted of murder.

10) Counsel failed to effectively cross-exam state witnesses.

11) Counsel failed to explore the ability to suppress evidence if the police failed to secure a search warrant for the home of the petitioner.

12) Counsel failed to call to the stand the only eyewitness to the circumstances of the discharge of the firearm causing the death of the victim, the petitioner's wife, who would have testified that the shooting was an accident and never advised the petitioner that he intended to not call this witness in the petitioner's defense.

13) Counsel failed to provide the petitioner with copies of discovery obtained from the prosecution.

14) Counsel failed to effectively argue for suppression of petitioner's statements to police on grounds of, inter alia, his unlawful arrest and detention not upon sufficient probable cause; and, particularly, failed to move to suppress statements made by the petitioner at the scene of the incident wherein the petitioner's liberty was restricted and where he was questioned.

15) Counsel failed to effectively investigate the case itself, crime scene and evidence.

16) Counsel failed to secure a preliminary hearing for the petitioner.

17) Counsel failed to present to and review with the petitioner any products of the petitioner's interrogations.

18) Counsel failed to secure and review with the petitioner a written or otherwise recorded statement obtained by the police

4

of their interview of the sole witness to the discharge of the firearm; a videotaped interview of the petitioner that was introduced in evidence at trial was never exhibited by trial counsel to petitioner.

19) Counsel failed to present to the petitioner any statements he obtained from the sole witness to the discharge of the firearm.

20) Counsel failed to object to any testimony regarding the petitioner's use of alcohol or drugs in the absence of any foundation therefore.

21) Counsel failed to present sufficient evidence and witnesses challenging the prosecution's allegations of insurance coverage as a motive for murder.

22) Counsel failed to secure and present evidence to counter the prosecutions assertions of a motive for murder of financial gain stemming from financial hardship, that the petitioner and his wife were not in financial straights.

23) Counsel failed to procure sufficient bases for the courts ruling on evidentiary challenges.

24) Counsel failed to present witnesses to secure admission of a crime scene into evidence of a constructed kitchen layout model.

25) Counsel failed to secure effective and meaningful sequestration of prosecution witnesses.

26) Counsel suggested in opening statement that the petitioner would not testify.

27) Counsel failed to object to a prosecution witness's "interpretation" of a taped 911 call exhibit in evidence which was made by the eyewitness to the firearm discharge who counsel never called as a witness in the case.

28) Counsel failed to object to prosecution witness testimony that an accident could only be determined upon "clear evidence."

29) Counsel failed to object to a prosecution witness's speculation on bullet path distances from the firearm to the victim's face at the time of the discharge of the weapon.

30) Counsel failed to object to the prosecution's solicitation of police witness's speculative testimony.

5

31) Counsel failed to solicit prosecution witness testimony regarding firearms discharge eyewitness contact with the petitioner after the incident in the absence of an evidentiary foundation therefore.

32) Counsel failed to move to suppress any evidence obtained after the petitioner's illegal detention and arrest in the absence of probable cause.

33) Counsel failed to object to solicited prosecution witness testimony that the crime scene was "staged" in the absence of a foundation therefore.

34) Counsel failed to present evidence that the discharged weapon may not have been working properly.

35) Counsel failed to object to testimony by the prosecution firearms expert when no testing of the firearm had been conducted by the expert rendering his testimonial opinions speculation.

36) Counsel failed to effectively cross-examine the prosecution forensic pathologist on his opinion evidence of bullet path distance.

37) Counsel failed to object to testimony relating to a washcloth recovered at the scene that was not tested in any way and was additionally otherwise irrelevant and inadmissible.

38) Counsel failed to render effective assistance by suggesting in crossexamination that the deceased was found in a defensive position and thereby injection this issue into the case.

39) Counsel failed to effectively cross-examine the prosecution witness presenting life insurance testimony.

40) Counsel failed to object to prosecution solicitation of legal definitions from its lay witnesses.

41) Counsel failed to object to prosecution witness references to not knowing the petitioner's "story yet" unconstitutionally shifting the burden of proof to the petitioner.

42) Counsel failed to render effective assistance when soliciting legal definitions from prosecution witnesses during cross-examination.

43) Counsel failed to object to prosecution solicitation of hearsay and to the prosecution's use of leading and vague questions.

6

44) Counsel failed to insist on the court's delineation of the bases for its summary denial of the petitioner's motion for a directed verdict.

45) Counsel failed to render effective assistance by calling one defense witness unprepared to testify who offered no beneficial testimony for the petitioner's case thereby losing the petitioner's right to the last closing argument and opening the door for the prosecution, in closing statement, to argue to the jury the petitioner's failure to call witnesses, such as the only eyewitness to the discharge of the firearm.

46) Counsel failed to object to the argumentative cross-examination of the sole defense witness by the prosecution and which called for speculation.

47) Counsel failed to object to the prosecution recalling of a police witness as to caller id issues irrelevant and therefore excludable in the absence of the presentation of a sufficient basis therefore.

48) Counsel failed to object to and move for a mistrial on the courts effective commentary on the evidence when the court interrupted the prosecution during closing argument correcting the prosecution and indicating in the presence of the jury that the court would not submit a particular unidentified verdict for the jury constituting confusion for the jury as to a verdict of not guilty.

49) Counsel failed to object to the prosecution's characterization in its closing argument of the only possible verdicts being guilty.

50) Counsel failed to object to the prosecution's misstatement of the law of murder during its closing argument.

51) Counsel failed to render effective assistance of counsel when, in closing argument, submitting to the jury that an eyewitness (which was not called by the defense) to the firearm discharge could have told the jury what happened.

52) Counsel failed to object to the inflammatory and prejudicial act of the prosecutor during closing argument directing a police officer witness present in the courtroom to place the firearm in the case against the prosecutor's head and directing the officer to pull the trigger.

53) Counsel failed to object to the prosecution's comment in closing argument of his personal opinions.

7

54) Counsel failed to submit sufficient and meaningful requests to charge to the court.

55) Counsel failed to object to the court's jury charge on accident, malice and due care.

56) Counsel failed to object to the court's reasonable doubt instruction to the jury.

57) Counsel failed to challenge the form of the indictment which singularly charged the petitioner with two offenses.

**Ground Two**: Ineffective assistance of counsel on direct appeal.

**Supporting Facts**:

1) Counsel, who was trial counsel, failed to cull from the record of the case all plausible grounds for appeal.

2) Counsel identified only two issues for review on direct appeal:

a. Whether the trial court erred in denying the petitioner's motion to suppress evidence of the insurance policy on the deceased; and

b. Whether the trial court erred in denying the petitioner's motion for a directed verdict.

3) Numerous other grounds for appeal were available for review, many of which are set forth within this petition in review of allegations of ineffective assistance by trial counsel.

**Ground Three**: Ineffective assistance of counsel in post-conviction proceedings.

**Supporting Facts:**

1) Counsel failed to render effective assistance of counsel in failing to ensure a continuance of the PCR hearing inasmuch as he received the 441 page transcript of the trial on the day of the PCR hearing and could not have had adequate time to prepare therefore and when advising the petitioner that he would not seek a continuance since he had invested time in being there that day.

2) Counsel failed to insist that the court provide adequate time for the hearing which was the last one that Friday, that day being devoted to PCR hearing involving the petitioner's trial counsel on other petitioner.

8

3) Counsel failed to secure and effectively digest and incorporate the trial counsel's file in his representation of the petitioner.

4) Counsel failed to subpoena witnesses to the PCR hearing a list of whom had been mailed to him by the petitioner.

5) Counsel failed to present expert testimony to support ground and arguments through the presentation at the PCR hearing of expert testimony in the areas of firearms function and malfunction and crime scene interpretation.

6) Counsel failed to effectively cross-examine trial counsel during the PCR hearing.

7) Counsel failed to effectively prepare for the PCR hearing.

8) Counsel failed to effectively investigate the case for hearing.

9) Counsel failed to interview witnesses.

10) Counsel failed to amend the petition to include additional grounds sought by the petitioner.

**Ground Four**: Denial of due process and right to a fair trial.

**Supporting Facts:**  The allegations contained herein which individually and collectively constitute a violation of the petitioner's right to due process as guaranteed him by the United States Constitution.

The trial court's errors.
The PCR court's errors.

## APPLICABLE LAW

**Summary Judgment Standard**

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is

9

entitled to summary judgment as a matter of law.  As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings.  Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue.  *Id.* at 324.  Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion.  *Anderson,* 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion.  *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

### HABEAS STANDARD OF REVIEW

Since the petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134

10

F.3d 615 (4th Cir.1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or

> 2. resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2).

Federal habeas corpus relief may not be granted unless the relevant state-court adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings," 28 U.S.C.A. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410.

### EXHAUSTION AND PROCEDURAL BAR

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

A. Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. §

2254 , which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

> (b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
>> (A) the applicant has exhausted the remedies available in the courts of the State; or
>>
>> (B) (I) there is either an absence of available State corrective process; or
>>
>> (ii) circumstances exist that render such process, ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court. The United States Supreme Court has consistently enforced the exhaustion requirement.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. SCAR 207; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). The second avenue of relief is by filing an application for PCR.

12

S.C. Code Ann. § 17-27-10 et seq.  A PCR applicant is also required to state all of his grounds for relief in his application. S.C. Code Ann. § 17-27-90.  Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts.  A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts.  *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977); *Richardson v. Turner*, 716 F.2d 1059 (4th Cir. 1983).

B. Procedural bypass

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, *Smith v. Murray*, 477 U.S. 527, 533 (1986).  Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, (i.e., direct appeal, appeal from PCR denial) and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a

prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote . . . not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case. *Reed v. Ross*, 468 U.S. 1, 10-11 (1984).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

C. Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner before this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *Matthews v. Evatt*, 105 F.3d 907 (4th Cir. 1997)(citing *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991); *Teague v. Lane*, 489 U.S. 288,297-98 (1989); and *George v. Angelone*, 100 F.3d 353,363 (4th Cir. 1996).

D. Cause and Actual Prejudice

14

The requirement of exhaustion is not jurisdictional and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. *Granberry v. Greer*, 481 U.S. 129, 131 (1987). In order to have such claims considered, a petitioner must show sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. 478. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.* Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. He is required to prove that specific errors infected the trial and were of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982).

## DISCUSSION

### Withdrawn Claims

In Ground One, the petitioner alleges his trial counsel was ineffective based upon fifty-seven allegations of error. In his response to the respondent's motion for summary judgment, the petitioner has withdrawn several of these issues. Specifically, the petitioner has withdrawn Issues 5, 10, 11, 20, 28, 29, 30, 31, 33, 36, 37, 38, 41, 56, and 57. (Pet'r's Mem. Opp. Summ. J. Mot. at 29, 30, 31, 35, 37, 38, 39, 40-41, and 48.) Accordingly, these issues will not be discussed in this report.

### Procedurally Barred Claims

15

Several of the petitioner's issues are procedurally barred.   As set out above, on direct appeal, the petitioner raised the following issues to the South Carolina Court of Appeals:

> 1. Did the trial court abuse its discretion by denying Bratcher's motion to suppress evidence concerning his wife's life insurance policy?
>
> 2. Did the trial court err by denying Bratcher's motion for a directed verdict?

In his PCR proceeding, only five issues were ruled on by the PCR judge and raised to the South Carolina Supreme Court in the certiorari proceedings:

> 1. Did trial counsel err in failing to call Daniel Spivey as a favorable witness on behalf of the defense?
>
> 2. Did trial counsel err in failing to call witnesses who would have testified that there was no marital discord between the parties in support of petitioner's defense of accident?
>
> 3. Did trial counsel err in failing to renew his motion to exclude the insurance policy benefits evidence?
>
> 4. Did trial counsel err in advising petitioner not to testify at trial?
>
> 5. Did trial counsel err in failing to object to the *Doyle* error in the case?

*(*Pet. for Writ of Cert. 2.) The PCR judge did not rule on all of the issues which the petitioner raised in his PCR application.  However, there is no evidence that a Rule 59 motion was filed to request a ruling on the issue.   *Al-Shabazz v. State,* 527 S.E.2d 742, 747 (S.C. 2000)(holding "party must timely file a Rule 59(e), SCRCP, motion to preserve for review any issues not ruled upon by the court in its order.")   Because the PCR judge did not address these issues in his order of dismissal, the South Carolina Supreme Court would not have been able to review these issues.  *McCullough v. State*, 464 S.E.2d 340, 341 (S.C.1995); *Pruitt v. State*, 423 S.E.2d 127, n. 2 (S.C.1992) (holding issue must be raised to and ruled on by the PCR judge in order to be preserved for review).

16

After reviewing the remaining forty-two issues raised in Ground One, it appears that all but eleven are procedurally barred. Liberally construing the petition, the following issues raised in Ground One were raised and ruled upon in the state courts: 4, 6, 12,15, 21, 22, 49, 52, and 53. The remaining issues are procedurally barred.

In Ground Two, the petitioner alleges that his appellate counsel was ineffective for failing to cull the record for appealable issues. The petitioner contends that appellate counsel raised only two issues on appeal, but numerous other grounds were available. Further, in Ground Four, the petitioner alleges he was denied due process and his right to a fair trial. These claims are also procedurally barred as they were not raised in the petitioner's PCR proceeding.

The petitioner appears to argue that his PCR counsel's failure to raise additional issues establishes the cause and prejudice necessary to excuse his procedural default. However, it is well-established that ineffective assistance of counsel on collateral review is not cause to excuse procedural default. *See Joseph v. Angelone,* 184 F.3d 320, 325 (4th Cir.1999)("In *Mackall,* we determined that "[b]ecause [an inmate] has no right to effective assistance of counsel in his state habeas proceedings, he cannot demonstrate as cause to excuse the procedural default of his claims that his trial and appellate counsel were constitutionally defective."); *Mackall v. Angelone,* 131 F.3d 442, 449 (4th Cir.1997). Accordingly, the petitioner has not shown cause and prejudice as to these claims, or that he is actually innocent of the crimes for which he was sentenced. Therefore, Issues 1, 2, 3, 7, 9, 13,14, 16, 17, 18, 19, 23, 24, 25, 26, 27, 32, 34, 35, 39, 40, 42, 43, 44, 45, 46, 47, 48, 51, 54, and 55 raised in Ground One; Ground Two; and Ground Four of this habeas petition are procedurally barred from review on the merits here.

In *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir.1995), the Court of Appeals stated that once a claim is determined to be procedurally barred, the court should not consider the issue on its merits. The Court noted that it is always tempting to discuss the merits as an

alternative reason for a conclusion, but that once a court finds an issue to be procedurally barred, all discussion which follows is only dicta. See *Karsten v. Kaiser Foundation Health Plan,* 36 F.3d 8, 11 (4th Cir.1993). Therefore, once a court has determined that a claim is procedurally barred, it should not stray into other considerations. Accordingly, the undersigned will not discuss the merits of these issues as they are procedurally barred. The remaining issues in Ground One and Ground Three are addressed below.

**Ground One**

In Issue 4, the petitioner contends trial counsel was ineffective for failing to call the petitioner as a witness so that he could testify in support of his accident defense. (Cert. Issue # 4.) The respondent submits that this issue is procedurally barred as the petitioner did not specifically raise this issue as a ground in his PCR proceeding, but rather merely testified that he did not recall a discussion with his trial counsel about whether he should testify in his defense at trial. (App. 443-451; 468.) Nevertheless, as the respondent concedes, the PCR judge did address this issue and found that the petitioner made a knowing and voluntary decision not to testify at trial following a full discussion with trial counsel. (App. 535 - 536.) The PCR judge also found trial counsel's advice to the petitioner not to testify was neither deficient nor prejudicial. (App. 536.)

At the PCR hearing, trial counsel testified that he talked with the petitioner about testifying at trial. (App. 486.) Trial counsel testified that there was a videotaped statement made by the petitioner to the police in which the petitioner denied any knowledge that a bullet was in the gun when he pulled the trigger. In the video, the petitioner explained how he had emptied the gun. (App. 485.) Trial counsel testified that he feared how the petitioner might testify during cross-examination. (*Id.*) He elaborated that he was concerned about the petitioner's demeanor and how during the trial it appeared that the petitioner lacked emotion. (App. 485-486.) Trial counsel testified that he feared the petitioner would fail to show appropriate emotions when testifying before the jury. (App.

18

407–408; 485- 486; 516-517; 519- 520.)   Trial counsel testified that he believed that the petitioner would have a better chance if the petitioner did not testify but instead presented his defense of accident  through his videotaped statement.  (App. 489; p. 511 -512.)   Trial counsel testified that the petitioner seemed to understand his concerns and that the petitioner appeared to agree that he should not testify. (App. 486- 487.)

The PCR judge found that trial counsel discussed with the petitioner his right to testify and provided an assessment of the benefits and harm.  (App. 535.)  The PCR judge noted that it was trial counsel's opinion that the petitioner's lack of emotion would be harmful and the taped statement could be used to show that the petitioner did not believe the gun was loaded.  (*Id.*)  The PCR judge concluded that trial counsel's advice was within expected professional norms and was neither deficient nor prejudicial.  (App. 536.)

Pursuant to *Strickland v. Washington,* 466 U.S. 668, 687 (1984), the petitioner must show (1) that his counsel's performance was so deficient as to fall below an objective standard of reasonableness, and (2) that the deficiency resulted in prejudice sufficient to render the results of the trial unreliable.  *Id.* A presumption of reasonableness applies to counsel's performance, and the court's review of counsel's strategic decisions is highly deferential.  *Id.*  at 689.

The petitioner's attempt to revisit the decision to testify garners no support from the Sixth Amendment.   Advice provided by a trial counsel on whether his client should testify is "a paradigm of the type of tactical decision that cannot be challenged as evidence of ineffective assistance." *Hutchins v. Garrison,* 724, F.2d 1425, 1436 (4th Cir. 1983). Further, the petitioner offers nothing more than speculation that he might have been acquitted or convicted of a lesser offense if he had testified at trial.  *Id.* at 1436.   "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ." *Strickland,* 466 U.S. at 690.   The record supports the PCR judge's determination that trial counsel made a reasonable tactical decision to advise the petitioner

19

not to testify after reviewing and weighing the choices and facts.  Accordingly, the PCR judge's decision was not contrary, nor an unreasonable application of, clearly established federal law.  Further, it was not based upon an unreasonable determination of facts in light of the state court record.  Thus, this ground is without merit

In Issue 6, the petitioner contends trial counsel was ineffective for failing to call witnesses who would testify about the petitioner's good character and his marital happiness. (PCR Cert. Issue # 2.)

At the PCR hearing, the petitioner testified that there were witnesses who could have testified at trial that there were no prior marital difficulties between the petitioner and the victim, his wife.  (App. 448.)   Specifically, in his PCR application, the petitioner states that trial counsel should have called his step-daughter, Jennifer Blumquist, to establish that the couple had a good marital relationship and that petitioner was not blamed by the victim's family for the victim's death. (App. 449; 470 -471.)  The petitioner also asserted that Janet Gay, the victim's sister, would have testified similarly.  At the PCR hearing, the petitioner identified several other witnesses who could have testified at trial about his character and marital relationship: Paula Crittendon, Steven Crittendon, Ruth Dolman, Homer Banks, Mildred Harmon and Mary Brown.  (App. 467; 476-477.)

At the PCR hearing, Greg Culbertson testified that he worked with the petitioner and the victim and knew of no turmoil between the two.  (App. 474 - 475.)  Culbertson testified at trial for the defense, but was not questioned about the couple's marital relationship. (App. 475.)   Ethel Banks, Homer Banks, Mildred Harmon, and Mary Brown were present at the PCR hearing and would have testified to the petitioner's good character. (App. 476 - 477.)

At the PCR hearing, trial counsel testified that he found Jennifer Blumquist to be very hostile toward him during his attempts to interview her. He also testified that rather than sitting on the defense side of the courtroom, she sat behind the solicitor during the trial.

20

(App. 492 - 493.)  Trial counsel testified that he discussed the possibility of calling Janet Gay as a defense witness but was concerned because the victim had told Gay about her suspicions regarding the petitioner's extra-marital activity and that the information would be elicited by the State on cross-examination. (App. 423 - 500.)   Trial counsel testified that the victim's family was angry when he attempted to interview them. (App. 500.)

The PCR judge found that he could not speculate on the testimony of Jennifer Blumquist or Janet Gay and that the petitioner did not meet his burden of showing that trial counsel was ineffective for failing to call them as witnesses at trial because they did not testify at the PCR hearing.  (App. ¶. 534- 535).  As to the other witnesses, the PCR judge found that trial counsel made strategic decisions not to call these witnesses because of the potential harm their testimony might cause the defense.

It is well settled that the choice of which witnesses will be called to testify generally is a matter of trial strategy, and such tactical decisions rarely support habeas corpus relief. *Goodson v. United States,* 564 F.2d 1071, 1072 (4th Cir.1977); *see also United States v. Kozinski,* 16 F.3d 795, 813 (7th Cir. 1994)(holding decision whether to call witnesses afforded "enormous deference").  Further, "without a specific, affirmative showing of what the missing testimony would have been, 'a habeas court cannot even begin to apply *Strickland's* standards because it is very difficult to assess whether counsel's performance was deficient, and nearly impossible to determine whether the petitioner was prejudiced by any deficiency in counsel's performance.' " *United States ex rel. Partee v. Lane*, 926 F.2d 694, 701 (7th Cir.1991)).  As the PCR judge noted, the petitioner did not present the testimony of Blumquist or Gray and thus cannot show prejudice from trial counsel's decision not to call them as witnesses.  Further, the PCR judge's determination that trial counsel made reasonable strategic decisions not to call these witnesses is supported by the record. Accordingly, the PCR judge's decision was not contrary, nor an unreasonable application

21

of, clearly established federal law.  Further, it was not based upon an unreasonable determination of facts in light of the state court record.  Thus, this ground is without merit.

In Issue 12, the petitioner contends trial counsel was ineffective for failing to call Daniel Spivey as a witness.  (PCR Cert. Issue # 1.)  Specifically, the petitioner alleges trial counsel erred in failing to call Spivey because he would have corroborated his defense of accident. (App. 448.) The PCR judge found trial counsel made a reasonable strategic decision not to call Spivey as a witness and that the petitioner concurred in that trial strategy at the time of trial. (App. 533.) The PCR judge also found that the petitioner failed to show prejudice because he failed to present Spivey's testimony at the PCR hearing. (App. 533-534.)

At the PCR hearing, the petitioner testified that Spivey was present at the time that the petitioner shot his wife and that it was Spivey who called 911. (App.  464.)  The petitioner testified that Spivey would testify that the petitioner had attempted to unload the gun and check the barrel before he turned to discharge the weapon through an open window.  He also testified that Spivey would testify that the victim stepped into the path of the bullet as the gun was discharged. (App. 465 - 466; 467.)

At the PCR hearing, trial counsel testified that he knew that Spivey would testify that the petitioner removed the clip from the gun. However, trial counsel also testified that Spivey gave law enforcement officers different versions of the shooting.  (App. 515.)  In one statement Spivey had told law enforcement officers that the petitioner had held the gun toward the victim and said "watch this" as he pulled the trigger.  (App. 487-488; 506; 514 -515; 520.) At the PCR hearing, trial counsel testified Spivey's statement was not presented to the jury at trial. (App. 488.)  However, he testified that a recording of Spivey's 911 call was introduced into evidence at trial through another witness and included Spivey's statement that the shooting was accidental. (App. 499.)  Trial counsel testified that he made a strategic decision not to call Spivey testify as a witness.  The 911 tape was favorable to

22

the defense and could not be cross-examined by the State to the petitioner's detriment. (App. 510.)   The PCR judge found trial counsel's advice was a matter of legitimate trial strategy.

First, again the petitioner is merely speculating that Spivey would have aided in his defense.  *See Porter v. State,* 629 S.E.2d 353, 358 (S.C.2006) (holding "[m]ere speculation of what a witness' testimony may be is insufficient to satisfy the burden of showing prejudice in a petition for PCR."); *Dempsey v. State,* 610 S.E.2d 812, 814 (S.C.2005) (holding "[a] PCR applicant cannot show that he was prejudiced by counsel's failure to call a favorable witness to testify at trial if that witness does not later testify at the PCR hearing or otherwise offer testimony within the rules of evidence.").  Further, as noted above, it is well settled that the choice of which witnesses to be called to testify generally is a matter of trial strategy, and such tactical decisions rarely support habeas corpus relief. *Goodson v. United States*, 564 F.2d 1071, 1072 (4th Cir.1977); *see also United States v. Kozinski,* 16 F.3d 795, 813 (7th Cir.1994)(decision whether to call witnesses afforded "enormous deference"). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ." *Strickland,* 466 U.S. at 690

In light of Spivey's prior statements, trial counsel's decision to not call Spivey to testify was a matter of reasonable trial strategy.  The record supports the PCR judge's decision that  trial counsel articulated an objectively valid reason for not calling Spivey as a defense witness.  Furthermore, the PCR judge properly concluded that the petitioner had failed to establish that he was prejudiced by trial counsel's failure to present Spivey as a defense witness when he failed to call Spivey as a witness at the PCR hearing.  As the PCR court's rejection of the ineffective assistance of counsel ground for relief did not result in an unreasonable application of *Strickland* and was not based upon an unreasonable determination of facts in light of the state court record, this ground is without merit. Accordingly, this claim should be dismissed.

In Issues 21, 22, and 39, the petitioner contends trial counsel was ineffective for failing to present evidence challenging the prosecutions's allegations that the petitioner and his wife were experiencing financial difficulties and that life insurance proceeds was a motive for the murder and for failing to effectively cross-examine the State's witness regarding the life insurance.  (PCR Cert. Issue # 3.)

Prior to trial, trial counsel moved in limine to exclude testimony or evidence regarding the victim's life insurance policy naming the petitioner as beneficiary. (App.  74-77.)   The trial court denied the motion. (App. 84 - 85.)  Trial counsel did not renew the objection when the evidence was introduced during the trial.  (App. 272-276.)  The petitioner asserts trial counsel's failure to renew the objection constituted ineffective assistance because failing to renew the objection prevented the issue from being raised in appellate review.

At trial Brenda Walsh, an employee benefits administrator for the petitioner and the victim's employer, testified regarding the petitioner's and the victim's life insurance policies and their amounts.  (App. 276.)  She testified that the petitioner had a life insurance policy and the victim had been the beneficiary and likewise the victim had designated her husband. (App. 276.) Walsh testified that naming a spouse is the normal practice.  Further, she testified that the insurance has been in effect since 1994 with the beneficiary of the victim's policies having always been the petitioner.   (App. 279-280.)  Finally, she testified that the petitioner has never attempted to collect any benefits.  (App. 281.)

At the PCR hearing, trial counsel testified that he moved in limine to exclude this evidence at a pretrial hearing. (App. 495.).  Trial counsel testified that he believed the in limine motion preserved the matter for appeal without further objection because no contrary intervening evidence had been introduced which could have changed the trial court's decision. (App. 505.)   Trial counsel also testified that he thought the evidence was admissible to establish  the petitioner's motive for murder and any further objection would only emphasize the matter to the jury to the petitioner's detriment.  (App. 494; 495.) Further,

trial counsel testified that he interviewed Walsh prior ro trial and planned to use her testimony to the benefit of the defense. (App. 495 - 496.)   Trial counsel elicited on cross-examination, the policies were benefits of employment and had been in effect since 1994 without any alteration.  (App. 278-281.)  The PCR judge  found the petitioner failed to establish that he was prejudiced by trial counsel's action.  (App. 537.)

First, a motion in limine does not preserve an issue for review.  A pretrial ruling on the admissibility of evidence is preliminary and is subject to change based on developments at trial.  To preserve the issue for appellate the party must object at the time the evidence is offered and a final ruling must be procured.  *State v. Smith,* 522 S.E.2d 598, 600 (S.C. 1999).  As a matter of substantive state law, evidence "of a life insurance policy is properly admitted when there is evidence of the defendant's knowledge of the policy's existence, its validity, or believed validity, and that the defendant will benefit from it."  *State v. Beckham,* 513 S.E.2d 606, 610 (S.C. 1999).

Even assuming counsel was deficient in failing to make a objection,[1] the petitioner has not shown a reasonable probability that the outcome would have been different. Trial counsel's failure to renew his objection to this evidence had no affect on the outcome of the petitioner's appeal.  There was sufficient evidence to establish that the petitioner knew of the existence of the policy and that he was the beneficiary.   It was a jury question as to whether at the time of the murder the petitioner had knowledge of the existence of a valid policy with him as the beneficiary.  *Beckham,* 513 S.E.2d at 610.  Accordingly, the PCR court's decision was not contrary, nor an unreasonable application of, clearly established

---

[1]Trial counsel's belief that there was no intervening evidence misconstrues the law. In *State v. Burton*, 486 S.E.2d 762 (S.C. Ct.App.1997), the court noted the general rule that a court's ruling on in limine motion is not a final decision, but then applied *State v. Mueller*, 460 S.E.2d 409, 410-11 (S.C.Ct.App.1995),  to hold that where an objection is made during trial and there are no intervening witnesses before the disputed testimony, the decision is final and the objection need not be renewed.  Here, there was clearly intervening witnesses prior to Walsh's testimony.

federal law.  Further, it was not based upon an unreasonable determination of facts in light of the state court record. Thus, this ground is without merit

In Issues 49, 52, and 53, the petitioner contends trial counsel was ineffective for failing to object to the solicitor's closing argument on several grounds.  (PCR Cert. Issue # 5.)  The petitioner contends that the solicitor impermissibly commented upon the petitioner's right to remain silent and his failure to present evidence in his defense in violation of *Doyle v. Ohio,* 426 U.S. 610 (1976).

At the PCR hearing, the petitioner alleged trial counsel was ineffective for failing to object to the solicitor's alleged prejudicial comment about the petitioner's failure to call Daniel Spivey as a witness. (App. 389 -390.)  The petitioner claimed the argument deprived him of the presumption of innocence and his right to rely upon the failure of the State to meet its burden of proving his guilt beyond a reasonable doubt. The PCR judge found that the comment by the State was not improper because the petitioner presented defense witnesses and because the comment was invited by the petitioner in his closing argument (App. 537 - 538; 461 - 462.)

In the closing argument to the jury, trial counsel told the jury that the defense could have called Spivey, there was no reason to do so. Trial counsel then questioned why the State had not subpoenaed Spivey. (App.  498.)  Trial counsel argued to the jury that Spivey reported the incident as an accident.  Trial counsel argued the 911 recording established the shooting was accidental and the State could have subpoenaed Spivey to explain to the jury that no accident occurred if that were true. (App. p. 499, lines 4-17).

The solicitor responded that "[t]he defense attorney came up there and said "look, there was another witness there, wasn't there.  This was this Spivey fellow. Why didn't they bring this Spivey up to testify?  He was right there.  He saw what happened, right?' Well, he's right. The defense attorney's right. He has just as much ability to call a witness as I do.

He presented a  witness. He could call anybody he wanted to."   The solicitor thereafter explained why he did not call Spivey as a witness. (App. 390 - 391.)

First, there is no indication that the comments were manifestly intended to comment on petitioner's exercise of his right not to testify.  Further, it is well "established that the government may comment on a defendant's failure to call witnesses to support his factual theories." *United States v. Robles-Vertiz*, 155 F.3d 725, 731 (5th Cir.1998).  The solicitor's remarks simply highlighted the defense's failure to introduce evidence supporting the petitioner's defense of accident.   The comment was more of a statement of the evidence which was before the jury rather than a comment on the petitioner's failure to testify.

Furthermore, it is well-settled that, when the defense makes comments in closing arguments that invite the government to respond, the prosecution, in rebuttal, may enter into areas which otherwise would constitute improper argument. *United States v. McNatt,* 931 F.2d 251, 258 (4th Cir.1991) (concluding the prosecution was entitled to respond to the defendant's argument that the police officer had planted the drugs); *United States v. Harrison*, 716 F.2d 1050, 1052-53 (4th Cir.1983).   The solicitor's comments were appropriate as a response to the petitioner's argument.  *United State v. Robinson,* 485 U.S. 25 (1988).

To the extent this issue in petitioner's petition for writ of certiorari raises a *Doyle* violation, this claim was not preserved for appeal as it was neither specifically raised to or ruled upon by the PCR court.   Moreover, as noted above, trial counsel's conduct invited the prosecutor to make the comments.  Accordingly, the PCR court's decision was not contrary, nor an unreasonable application of, clearly established federal law.  Further, it was not based upon an unreasonable determination of facts in light of the state court record. Thus, this ground is without merit.


**Ground Three**

In Ground Three, the petitioner raises ten allegations of ineffective assistance of PCR counsel. These claims are not cognizable in a federal habeas action. Ineffective assistance of PCR counsel is not a ground for federal habeas relief. *Coleman,* 501 U.S. 722. Accordingly, the claims raised in Ground Three should be dismissed.

### CONCLUSION

Wherefore, it is RECOMMENDED that the Respondent's Motion for Summary Judgment (Dkt. # 18) be GRANTED; and the habeas petition DISMISSED with prejudice.

IT IS SO RECOMMENDED.

BRUCE H. HENDRICKS
UNITED STATES MAGISTRATE JUDGE

June 1, 2009
Greenville, South Carolina

**The petitioner's attention is directed to the important notice on the next page.**

28

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 10768
Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).